Dear Mr. Cowan:
This office is in receipt of your recent request for an Attorney General's Opinion regarding the right of access by an adjacent property owner to Airport property originally conferred by lease agreement, and the right of the Authority to remove a culvert placed pursuant to the lease allowing access between the airport and the adjacent property owner's property. Specifically, you ask:
 1) Does Mr. George Eames, the adjacent property owner, have a right of access to the airport under the lease agreement entered into by the Concordia Parish Airport Authority and Mr. Eames on April 14, 1983?
 2) Under LSA-R.S. 2:601 et seq., the statute authorizing the creation of Airport Authorities, does the Airport Authority have full control and authority to manage the affairs of the airport?
 3) In light of the Airport Authority's powers and the legal status of the Authority's relationship with Mr. Eames, may the Authority remove the culvert over which Mr. Eames gains access to the airport?
The lease agreement was entered into by the Concordia Parish Airport Authority and George Eames on April 14, 1983. The duration of the lease agreement is specified in the lease as follows:
 The term of this Agreement shall be for a period of five (5) years commencing on April 15, 1983. The Airport Use Fees will be re-examined and adjusted at the end of each five-year period by an amount equal to seven (7%) percent of the preceding five-year period or by the Consumer Cost Index, whichever is greater. The rates for fuel flowage shall be re-examined and, if justified, re-adjusted at the commencement of each five-year period, so as to be comparable with flowage fees commonly acceptable in the industry.
The first sentence clearly states that the term of the lease is five years. However, the remainder of the paragraph indicates that multiple five-year periods are contemplated. In order to fix the duration of the agreement, these seemingly contradictory provisions must be reconciled.
The remainder of the paragraph can be interpreted as providing the lease amount for successive five year lease terms in the event the additional terms are agreed to between the Airport Authority and Mr. Eames. Alternatively, a second interpretation of this paragraph is that the lease is to operate indefinitely, with the prices fixed for a series of five-year periods. This second interpretation would result in a perpetual lease void under Louisiana law. Liner v. LaCroix, 588 So.2d 404
(La.App. 2d Cir. 1991). Leslie v. Blackwell, 370 So.2d 178
(La.App. 3d Cir. 1979). A lease susceptible of more than one construction must be given that construction which will give valid effect to the agreement rather than that construction which will destroy it. Mire v. Haas, 174 So. 374, 378 (La.App. Orl. 1937). It is the opinion of this office that the term of the agreement was fixed at five years, with the remainder of the paragraph providing for the lease amount in the event successive lease terms were agreed to. The lease has therefore expired.
Mr. Eames right of access notwithstanding the expiration of the lease is dependant on whether the Airport Authority's failure to prevent his continued access to the airport constituted a reconduction of the lease. Article 2688 of the Louisiana Civil Code states:
 If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by a new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease.
Louisiana courts have applied this article to the reconduction of leases of non-possessory interests, such as rights of access. Pivach v. Plaquemines Parish CommissionCouncil, 501 So.2d 257 (La.App. 4th. Cir. 1986).
Applying this article to the present lease of a non-possessory interest, continued use by Mr. Eames of the airport for one month after the expiration of the lease term (i.e. April 15, 1988), without any steps having been taken by the Airport Authority to cause him to terminate use of the airport, would have constituted a reconduction of the lease for one year. The Airport Authority has not indicated it took any action to notify Mr. Eames of the expiration of his lease and terminate his use of the airport prior to May 15, 1988. Therefore, the lease was extended by reconduction for one year subsequent to the expiration of the five-year lease term. Additionally, the lease was extended by reconduction in each subsequent year that the requisite conditions for reconduction were met.[1]
Article 2688 only establishes a presumption in favor of reconduction, which cannot be used to force a contract on unwilling parties. Ashton Realty Co. v. Prowell, 115 So. 579 (La. 1928). The presumption does not apply when either party expresses a contrary intent prior to the expiration of the lease term. C.C. art. 2691; Eames v. Goodwin, 337 So.2d 909 (La.App. 3d Cir. 1976). The Airport Authority correspondence with Mr. Eames in January, 1997 clearly expresses an intent contrary to the continuance of the prior lease agreement. The Airport Authority maintained that no lease was currently in effect, rejected Mr. Eames rental payments, and expressed a desire to take action (i.e., removal of the culvert) that was inimical to the continuance of the parties' prior relationship. It is the opinion of this office that no reconduction operated in April of this year.
In answer to your first question, it is the opinion of this office that Mr. Eames has no present right of access to the Airport either under the lease agreement entered into by the Airport Authority and Mr. Eames on April 14, 1983, or by reconduction of that lease after expiration of its five year term.
With regard to your second question, La. R.S. 2:604
provides broad powers to Airport Authorities to manage the affairs of airports under their control, including the power:
 (1) To exercise all or any portion of the administrative powers, functions and authority, relative to airports, vested in the governing body of the subdivision;
 (2) To execute such contracts and other instruments and take such other action as may be necessary or convenient to carry out the purposes of this Chapter;
 (3) To plan, acquire, construct, improve, maintain, equip, operate, regulate and protect airports and air navigation facilities . . .
In answer to your second question, it is the opinion of this office that pursuant to these provisions, the Airport Authority has the full authority to manage the affairs of the Airport. Of course, this authority must be exercised in a manner consistent with state and federal laws and regulations.
Your third question concerns whether the Airport Authority may remove the culvert over which Mr. Eames gains access to the airport. Pursuant to the recommendation of the state Department of Transportation and Development Aviation Program, the Authority wishes to remove the culvert in conjunction with a fencing project intended to provide greater security to Airport premises and to forfend possible litigation stemming from unauthorized access to Airport property. Such action falls within the power specified in La. R.S. 2:604 (3). This section provides that an Airport Authority has the power: "to plan, acquire, construct, improve, maintain, equip, operate, regulate and protect airports and air navigation facilities." Furthermore, given that we believe there is no lease agreement currently in effect with Mr. Eames, the Airport Authority has no obligation to Mr. Eames to maintain his source of access to the airport. Provided the culvert is located on Airport property, it is the opinion of this office that the Concordia Airport Authority has the legal power to and may remove the culvert.
We trust the foregoing has been helpful. Should you have any further questions, please contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ FREDERICK C. WHITROCK Assistant Attorney General
RPI/FCW/rpd/tp
[1] Continued use of the airport by George Eames for one month subsequent to the expiration of the lease, and no opposition to said continued use expressed by the Airport Authority results in reconduction of the Lease for a period of one year under Civil Code Article 2688.